## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MATTHEW HARN,<br><br>     Plaintiff,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION; CAPITAL ONE BANK (USA), N.A.; and CAPITAL ONE, N.A.,<br><br>              Defendants. | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT** |

Matthew Harn, an individual consumer Plaintiff, individually and on behalf of a Class defined below of similarly situated persons, allege the following against Defendants Capital One Financial Corporation, Capital One Bank (USA), N.A. and Capital One, N.A. (collectively, "Capital One" or "Defendants"), based upon personal knowledge and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

### PARTIES

1.      Capital One is a bank holding company and financial institution that, among other things, offers credit cards to consumer applicants throughout the United States and is one of the largest issuers of credit cards in the United States.

2.      Plaintiff is an individual residing in Kansas who applied for and was issued one or more credit cards by Capital One and, based on information and belief, had his PII (as defined later herein) exposed or compromised as a result of the data breach referenced herein.

3.      Defendant Capital One Financial Corporation is a Delaware corporation with its principal place of business in McLean, Virginia.

4.      Defendant Capital One, N.A., is a national bank with its principal place of business in McLean, Virginia, and is a wholly-owned subsidiary of Capital One Financial Corporation.

5.      Defendant Capital One Bank (USA), N.A., is a national bank with its principal place of business in McLean, Virginia, and is a wholly-owned subsidiary of Capital One Financial Corporation.

## JURISDICTION AND VENUE

6.      This Court has general jurisdiction over Capital One and original jurisdiction over Plaintiff's claims.

7.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, and Capital One is a citizen of a State different from that of at least one Class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

8.      This Court has personal jurisdiction over Capital One because it is authorized to and regularly conducts business in Kansas.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) (2) because Capital One entered into a Credit Card Agreement with Plaintiff in Kansas and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Kansas.

## GENERAL ALLEGATIONS

10.      Capital One collects personal identifiable information and other information from consumers at the time they apply for or seek to open an account, including but not limited to name, date of birth, address, phone, Social Security number, driver's license, email address, income, and

various financial and credit history information, including account balances and payment history and information on account transactions and credit cards or other debt.

11.     As used throughout this Complaint, "Personal Identifiable Information" or "PII" is defined as all information exposed by the Capital One data breach, including all or any part or combination of name, address, birth date, Social Security number, driver's license information (any part of license number, state, home address, dates of issuance or expiration), telephone number, email address, tax identification number, credit card number, usernames, passwords, or dispute documents with personally identifying information (such as images of government-issued identifications).

12.     Capital One collected such PII from Plaintiff.

13.     Capital One entered into a Credit Card Agreement with Plaintiff and millions of others similarly situated to Plaintiff, and it requested, obtained, and maintained the PII of Plaintiff and millions of others similarly situated to Plaintiff.

14.     Capital One was well aware of the cyber-dangers it faced as a credit card company that would be the logical target for cyberattacks and "hacks," given the sensitive PII stored in Capital One's databases.

15.     In the Credit Card Agreement, Capital One represented and agreed that the products and services it offered Plaintiff supported and included information privacy protection, and referred Plaintiff to information available at www.capitalone.com.

16.     Capital One issued a Privacy Notice to Plaintiff representing that Capital One would keep confidential Plaintiff's PII, including but not limited to name, Social Security number, address, phone number, and the fact that Plaintiff may be a Capital One customer.

17.     Capital One falsely claimed that its security procedures relating to Social Security Numbers would keep that PII confidential and prohibit its unlawful disclosure among other things:[1]



18.     Capital One represented that it understood how important security and confidentiality are to Plaintiff, and it claimed to use certain security techniques, which it claimed complied with or even exceeded federal regulatory requirements, to protect Plaintiff's PII, including but not limited to:

- Maintain physical safeguards, such as secure areas in buildings; electronic safeguards, such as passwords and encryption; and procedural safeguards, such as customer authentication procedures to protect against ID theft;

- Restricting access to PII to only authorized employees who only obtain that information for business purposes;

---

[1] https://www.capitalone.com/identity-protection/privacy/social-security-number (last accessed July 30, 2019).

- Carefully selecting and monitoring the outside companies to perform services, such as mail vendors who send out statements;

- Requiring outside companies to keep customer information safe and secure, and not allow them to use or share the information for any purpose other than the job they are hired to do; and

- Training employees on these security procedures, providing security awareness reminders and conducting regular audits to verify compliance.

19.    Capital One further offered a "Technology Guarantee," claiming that its systems and networks had security "built into them" using internationally recognized security standards.[2]

### Technology Guarantee

We build information security into our systems and networks using internationally recognized security standards, regulations, and industry-based best practices.

---

[2] https://www.capitalone.com/applications/identity-protection/commitment/ (last accessed July 30, 2019).

20.     Capital One falsely claimed that the PII in its possession is encrypted by 128-bit Secure Socket Layer, which Capital One claims "can only be viewed by you and our secure systems.[3]

> ## Encrypted Sessions
>
> We use some of the strongest forms of encryption commercially available for use on the Web today.
>
> Online communication between you, your account, and Capital One are protected. Your data is encrypted with 128-bit Secure Socket Layer (SSL), which helps ensure that sensitive information can only be viewed by you and our secure systems.

21.     But Plaintiff's stolen PII, and the stolen PII of the Class, was not encrypted, as Capital One has now admitted in its 8-K filing to the SEC: "Due to the particular circumstances of this incident, the unauthorized access also enabled the decrypting of the data."[4]

22.     Capital One claimed that it protected the confidentiality of Plaintiff's Social Security number through policies and procedures that prohibit the unlawful disclosure of Social Security numbers and limit access to Social Security numbers to employees or others with legitimate business purposes. These safeguards were to apply to all Social Security numbers collected through any channel or retained in any way by Capital One in connection with customer, employee or other relationships.

---

[3] https://www.capitalone.com/applications/identity-protection/commitment/ (last accessed July 30, 2019).
[4] Capital One Financial Corporation, 8-K Filing with the SEC, available at:
file:///C:/Users/dbuller/Desktop/CapitalOneFinancialCorp%20(1).pdf (last accessed July 30, 2019).

23.     On July 29, 2019, the United States of America filed a criminal complaint against Ms. Paige A. Thompson in the United States District Court for the Western District of Washington in Seattle (the "Thompson Complaint").

24.     In the Thompson Complaint, it was revealed that Capital One was subject to one of the largest data breaches in our nation's history.  According to the allegations in the Thompson Complaint, Ms. Thompson intentionally accessed without authorization a computer containing information belonging to Capital One Financial Corporation, and thereby obtained information contained in a financial record of a financial institution and of a card issuer.  According to the allegations in the Thompson Complaint, the information accessed by Ms. Thompson included the PII of approximately 100 million individuals in the United States who applied for Capital One credit card products from 2005 through early 2019.  In fact, Capital One has informed the SEC that, based on its current information (which is subject to change) in addition to the 1 million Social Insurance Numbers from its Canadian customers, approximately 140,000 social security numbers and 80,000 linked bank account numbers were involved; that the stolen date included customer status data such as "credit scores, credit limits, balances, payment history, and contact information"; and that "transaction data" was stolen from 2016, 2017, and 2018.[5]   Ms. Thompson posted the stolen information to a webhosting company (GitHub) permitting access to the data by some 37 million users.  Furthermore, Capital One did not even discovery the data breach perpetrated by Ms. Thompson as a result of Capital One's diligence or through its cybersecurity systems, but rather by a third party who "sent a message to the company's responsible disclosure email address with a link to the GitHub page."

---

[5] Capital One Financial Corporation, 8-K Filing with the SEC, available at:
file:///C:/Users/dbuller/Desktop/CapitalOneFinancialCorp%20(1).pdf  (last accessed July 30, 2019).

25.     Upon information and belief, Plaintiff's PII was among the confidential information compromised in the Capital One data breach described in the Thompson Complaint, causing Plaintiff to suffer injury and damages, including but not limited to the improper disclosure of his PII, the loss of the benefit of his bargain under her Credit Card Agreement with Capital One, the loss of the value of his PII, the imminent threat of unauthorized charges to his credit card account and disclosures of his PII, the potential for identity theft and other fraud, the loss of privacy, and out-of-pocket expenses and time devoted to mitigating the effects of the data breach and ascertaining the extent of his losses and exposure.

26.     Plaintiff would not have entered into the terms of the Credit Card Agreement if Plaintiff had known the security provided by Capital One was not reasonable security or that Capital One was not providing the security that Capital One represented it would provide, as was revealed by the data breach described in the Thompson Complaint.

27.     Plaintiff would not have applied for a credit card with and provided his PII to Capital One if Capital One had disclosed that it lacked adequate security measures and data security practices, as was revealed by the data breach described in the Thompson Complaint.

28.     Plaintiff suffered actual injury and damages in paying money to, and purchasing products through, Capital One, making expenditures Plaintiff would not have made on a Capital One credit card had Capital One disclosed that it lacked adequate security measures, as was revealed by the data breach described in the Thompson Complaint.

29.     Plaintiff also anticipates spending time and effort speaking with representatives and monitoring his accounts and credit history, as well as generally suffering annoyance, interference, and inconvenience, as a result of the data breach described in the Thompson Complaint.

30.     Plaintiff remains at a substantial and imminent risk of future harm as a result of the data breach described in the Thompson Complaint.

## CLASS ALLEGATIONS

31.     Plaintiff brings this action on behalf of himself and those similarly situated both across the United States and within their State or Territory of residence.

32.     In accordance with Federal Rules of Civil Procedure 23, Plaintiff brings this case as a class action on behalf of a Class including all persons in the United States whose PII was obtained or maintained by Capital One and compromised as a result of the data breach referenced in the Thompson Complaint.

33.     Furthermore, Plaintiff brings this action on behalf of a state subclass of Kansas residents whose PII was obtained or maintained by Capital One and compromised as a result of the data breach referenced in the Thompson Complaint (the "Kansas Subclass").

34.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2),  and/or (b)(3).

35.     The class satisfies the numerosity requirement because it is composed of millions of persons, in numerous locations. The number of class members is so large that joinder   of all its members is impracticable.

36.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether the data breach referenced in the Thompson Complaint constitutes a breach of Capital One's contractual obligations to the Class, whether Capital One was negligent in its representations to the Class concerning its security protocols,

whether Capital One was negligent in establishing, implementing, and following security protocols, whether Capital One failed to abide by all applicable legal requirements (including relevant state law requirements, such as the Kansas Consumer Protection Act) and industry standards concerning the privacy and confidentiality of the Class members' PII; whether the Class members' PII was compromised and exposed as a result of the data breach and the extent of that compromise and exposure; and whether the Class members are entitled to damages.

37.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Capital One as alleged herein, and all members of the Class are similarly affected by Capital One's wrongful conduct and the data breach referenced in the Thompson Complaint.

38.     Plaintiff will fairly and adequately represent the Class and have retained counsel competent in the prosecution of class action litigation.  Plaintiff has   no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the   vigorous prosecution of this action and anticipates no difficulty in the management of this  litigation as a class action.

39.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a  risk of adjudications with respect to individual members of the Class that, as a practical matter,   would be dispositive of the interests of other members not parties to this action, or that would  substantially impair or impede their ability to protect their interests.

40.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

41.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I -- Breach of Contract

42.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

43.     Capital One and Plaintiff (and the Class) agreed to enter into the aforementioned Credit Card Agreement.

44.     Plaintiff (and the Class) substantially performed under the Credit Card Agreement.

45.     As set forth above, Capital One breached the Credit Card Agreement by failing to fulfill its agreement to protect the confidentiality of the PII of Plaintiff and the Class.

46.     As a result of Capital One's breach, Plaintiff and the Class have suffered injury, including but not limited to the loss of the benefit of their bargain under the Credit Card Agreement, loss of the value of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and other ascertainable losses of money or property, and are entitled to damages in an amount to be proven at trial.

## COUNT II -- Negligence

47.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

48.     Capital One owed a duty to Plaintiff and the Class to use and exercise reasonable and due care in obtaining, retaining, and securing their PII that Capital One collected.

49.     Capital One owed a duty to Plaintiff and the Class to provide security, consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected their PII that Capital One collected.

50.     Capital One owed a duty to Plaintiff and the Class to implement processes to quickly detect a data breach, to timely act on warnings about data breaches, and to inform the Class of a data breach as soon as possible after it is discovered.

51.     Capital One owed a duty of care to Plaintiff and the Class because they were a foreseeable and probable victim of any inadequate data security practices.

52.     Capital One solicited, gathered, and stored the PII provided by Plaintiff and the Class.

53.     Capital One knew or should have known it inadequately safeguarded this information.

54.     Capital One knew that a breach of its systems would inflict millions of dollars of damages upon Plaintiff and the Class, and Capital One was therefore charged with a duty to adequately protect this critically sensitive information.

55.     Capital One had a special relationship with Plaintiff and the Class. Plaintiff's and the Class's willingness to entrust Capital One with their PII was predicated on the understanding that

Capital One would take adequate security precautions. Moreover, only Capital One had the ability to protect its systems and the PII it stored on them from attack.

56.     Capital One's own conduct also created a foreseeable risk of harm to Plaintiff and the Class and their financial information. Capital One's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

57.     Capital One breached its duties to Plaintiff and the Class by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the financial information of Plaintiff and the Class.

58.     Capital One breached its duties to Plaintiff and the Class by creating a foreseeable risk of harm through the misconduct previously described.

59.     Capital One breached the duties it owed to Plaintiff and the Class by failing to properly implement technical systems or security practices that could have prevented the loss of the data at issue.

60.     Capital One breached the duties it owed to Plaintiff and the Class by failing to timely and accurately disclose that Plaintiff's and Class members' PII had been improperly acquired or accessed.

61.     The law further imposes an affirmative duty on Capital One to timely disclose the unauthorized access and theft of the financial information to Plaintiff and the Class so that Plaintiff and the Class can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their financial information.

62.     Capital One breached its duty to notify Plaintiff and the Class by failing to provide Plaintiff and the Class information regarding the breach until July 29, 2019. To date, Capital One has not provided sufficient information to Plaintiff and the Class regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and the Class.

63.     As a direct and proximate result of Capital One's negligent conduct, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III – Negligent Misrepresentation

64.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

65.     Through its Privacy Policy and other actions and representations, Capital One held itself out to Plaintiff and the Class as possessing and maintaining adequate data security measures and systems that were sufficient to protect the personal and financial information of customers using credit cards issued to Plaintiff and the Class.

66.     Capital One further made a "Technology Guarantee" to its customers that its systems and networks were protected by security using internationally recognized security standards, regulations, and industry-based best practices.

67.     Capital One knew or should have known that it was not in compliance with the representations made in its Privacy Policy and Technology Guarantee.

68.     Capital One knowingly and deliberately failed to disclose material weaknesses in its data security systems and procedures that good faith and common decency required it to disclose to Plaintiff and the Class.

69.     Neither Plaintiff nor the Class could have known or discovered the material weaknesses in Capital One's data security practices.

70.     A reasonable business would have disclosed information concerning material weaknesses in its data security measures and systems to Plaintiff and the Class.

71.     Capital One also failed to exercise reasonable care when it failed to timely communicate information concerning the data breach that it knew, or should have known, compromised the personal and financial information of customers using credit cards issued by Plaintiff and the Class.

72.     Plaintiff and the Class relied on Capital One's representations, or lack thereof, when they provided their PII to Capital One.

73.     As a direct and proximate result of Capital One's negligent misrepresentations by omission, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT IV – Negligence Per Se

74.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

75.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair…practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Capital One of failing to use reasonable measures to protect PII.

76.     Capital One violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards. Capital One's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

77.     Capital One's violation of Section 5 of the FTC Act constitutes negligence per se.

15

78.     Plaintiff and the Class are within the category of persons the FTC Act was intended to protect.

79.     The harm that occurred as a result of the data breach referenced in the Thompson Complaint is the type of harm the FTC Act was intended to guard against.

80.     As a direct and proximate result of Capital One's negligence per se, the Plaintiff and the Class have suffered and continue to suffer injuries, as detailed above, and the continued risk of exposure of their PII in Capital One's possession, and are entitled to damages in an amount to be proven at trial.

### COUNT V – Unjust Enrichment

81.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

82.     Plaintiff and the Class have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Capital One. This PII was conferred on Capital One directly by Plaintiff and the Class themselves.

83.     Capital One was benefitted by the conferral upon it of the PII pertaining to Plaintiff and the Class and by its ability to retain and use that information. Capital One understood that it was in fact so benefitted.

84.     Capital One also understood and appreciated that the PII pertaining to Plaintiff and the Class was private and confidential and its value depended upon Capital One maintaining the privacy and confidentiality of that PII.

85.     But for Capital One's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Capital One, and Capital One would have been deprived of the competitive and economic advantages it enjoyed by

falsely claiming that its data-security safeguards met reasonable standards, including, without limitation, wrongfully gaining customers, charging excessive interest rates, collecting excessive late fees, and realizing excessive profits.

86.     As a result of Capital One's wrongful conduct as alleged in this Complaint (including among things its utter failure to employ adequate data security measures and its continued maintenance and use of the PII belonging to Plaintiff and the Class without having adequate data security measures, and its other conduct facilitating the theft of that PII) Capital One has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

87.     Capital One's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive PII, while at the same time failing to maintain that information secure from intrusion.

88.     Under the common law doctrine of unjust enrichment, it is inequitable for Capital One to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and the Class in an unfair and unconscionable manner. Capital One's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

89.     The benefit conferred upon, received, and enjoyed by Capital One was not conferred officiously or gratuitously, and it would be inequitable and unjust for Capital One to retain the benefit.

90.     Capital One is therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Capital One as a result of its wrongful conduct, including specifically

the value to Capital One of the PII that was stolen in the Capital One data breach and the profits Capital One is receiving from the use and sale of that information.

## COUNT VI – Declaratory Judgment

91.     Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

92.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

93.     An actual controversy has arisen in the wake of the Capital One data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Capital One is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their PII. Plaintiff allege that Capital One's data security measures remain inadequate.

94.     Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

95.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Capital One continues to owe a legal duty to secure consumers' PII and to timely notify consumers of any data breach and that Capital One is required to establish and implement data security measures that are adequate to secure consumers' PII.

96.     The Court also should issue corresponding prospective injunctive relief requiring Capital One to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

97.     If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Capital One. The risk of another such breach is real, immediate, and substantial. If another breach at Capital One occurs, Plaintiff will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

98.     The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Capital One if an injunction is issued. Among other things, if another massive data breach occurs at Capital One, Plaintiff will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Capital One of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Capital One has a pre-existing legal obligation to employ such measures.

99.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Capital One, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose confidential information would be further compromised.

### COUNT VII – Kansas Consumer Protection Act

100.     Plaintiff, individually and on behalf of the Kansas Subclass, incorporates and realleges all allegations above as if fully set forth herein, and asserts this Count.

101.     This Count is The Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50-623, et seq., is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

102.    Plaintiff and Kansas Class members are "consumers" as defined by K.S.A. § 50-624(b).

103.    The acts and practices described herein are "consumer transactions," as defined by K.S.A. § 50-624(c).

104.    Capital One is a "supplier" as defined by K.S.A. § 50-624(l).

105.    Capital One advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

106.    Capital One engaged in deceptive and unfair acts or practices, including:

a.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Kansas Class members' PII, which was a direct and proximate cause of the Capital One data breach;

b.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Capital One data breach;

c.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kansas Class members' PII;

d.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Kansas Class members' PII, including by implementing and maintaining reasonable security measures;

e.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kansas Class members' PII;

20

f.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Kansas Class members' PII; and

g.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kansas Class members' PII.

107.    Capital One's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Capital One's data security and ability to protect the confidentiality of consumers' PII.

108.    Capital One intended to mislead Plaintiff and Kansas Class members and induce them to rely on its misrepresentations and omissions.

109.    Had Capital One disclosed to Plaintiff and the Class that its data systems were not secure and, thus, vulnerable to attack, Capital One would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Capital One was trusted with sensitive and valuable PII regarding hundreds of millions of consumers, including Plaintiff and the Kansas Class. Capital One accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public. Accordingly, because Capital One held itself out as having a special role in the financial system with a corresponding duty of trustworthiness and care, Plaintiff and the Kansas Class members acted reasonably in relying on Capital One's misrepresentations and omissions, the truth of which they could not have discovered.

110.    Capital One also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of K.S.A. § 50-627, including (a) Knowingly taking advantage

of the inability of Plaintiff and the Kansas Class to reasonably protect their interests, due to their lack of knowledge (see K.S.A. § 50-627(b)(1)); and (b) Requiring Plaintiff and the Kansas Class to enter into a consumer transaction on terms that Capital One knew were substantially one-sided in favor of Capital One (see K.S.A. § 50- 627(b)(5)).

111.    Plaintiff and the Kansas Class had unequal bargaining power with respect to their ability to control the security and confidentiality of their PII in Capital One's possession.

112.    The above unfair, deceptive, and unconscionable practices and acts by Capital One caused substantial injury to Plaintiff and Kansas Class members that they could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

113.    Capital One acted intentionally, knowingly, and maliciously to violate Kansas's Consumer Protection Act, and recklessly disregarded Plaintiff and Kansas Class members' rights. Capital One's past data breaches put it on notice that its security and privacy protections were inadequate.

114.    As a direct and proximate result of Capital One's unfair, deceptive, and unconscionable trade practices, Plaintiff and Kansas Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

115.    Plaintiff and Kansas Class members seek all monetary and non-monetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under K.S.A. §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, as applicable, respectfully requests that the Court enter judgment in their favor and against Capital One, as follows:

1.     That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

2.     That Plaintiff be granted the declaratory relief sought herein;

3.     That the Court grant permanent injunctive relief to prohibit Capital One from continuing to engage in the unlawful acts, omissions, and practices described herein;

4.     That the Court award Plaintiff and Class and Class members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

5.     That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

6.     That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

7.     That the Court award pre- and post-judgment interest at the maximum legal rate; and

8.     That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand a jury trial on all claims so triable.

FOULSTON SIEFKIN LLP

By: */s/ Scott C. Nehrbass*
    Scott C. Nehrbass, KS #16285
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS  66210-2000
(913) 253-2144
(866) 347-1472 FAX
Email:  snehrbass@foulston.com

Boyd A. Byers, KS Bar No. #16253
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Tel. (Direct): 316-291-9796
Fax: 866-559-6541
bbyers@foulston.com

ATTORNEYS FOR PLAINTIFF